UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

```
FTI CONSULTING, INC.
16701 Melford Boulevard, Suite 200
Bowie, MD 20715

        and

FTI, LLC
555 12th Street, NW, Suite 700
Washington, DC 20004

            Plaintiffs,                 Case No.

        v.

EDWARD WESTERMAN
2505 Trader Road
P.O. Box 10545
Jackson, WY 83002

            Defendant.
```

**COMPLAINT FOR MONETARY DAMAGES AND DECLARATORY RELIEF**

Plaintiffs, FTI Consulting, Inc. and its subsidiary FTI, LLC (together, "FTI"), by and through their undersigned counsel, bring this Complaint against Defendant Edward Westerman and allege as follows:

**NATURE OF THE ACTION**

1. FTI is a leading global consulting firm with offices and employees around the world, including in the District of Columbia and over 20 states. In this action, FTI seeks damages from Mr. Westerman, a former senior managing director of FTI, for his failure to pay certain required amounts to FTI based upon breaches of his restrictive covenant not to compete against FTI for a year following termination of his employment.

2. FTI further seeks a judicial declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Mr. Westerman's restrictive covenants concerning non-competition and non-solicitation, as set forth below, are valid and enforceable under the governing Maryland law.

## THE PARTIES

3. Plaintiff FTI Consulting, Inc. is a corporation organized under the laws of the State of Maryland with its principal place of business in Bowie, Maryland. It is a citizen of Maryland.

4. Plaintiff FTI, LLC is a limited liability company organized under the laws of the State of Maryland, with its headquarters in Washington, D.C. FTI, LLC is a wholly owned subsidiary of FTI Consulting, Inc. and is therefore also a citizen of Maryland.

5. Defendant Edward Westerman is an individual who resides in Jackson, Wyoming, and is a Wyoming citizen. Mr. Westerman was previously employed by FTI, LLC, serving as a senior managing director until his resignation, which became effective on February 29, 2024.

6. In March 2024, Mr. Westerman began serving as a managing director at Secretariat Advisors, LLC ("Secretariat"), a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Atlanta, Georgia. Like FTI, Secretariat is an international consulting firm with offices and employees in locations around the world, including various offices in the United States. Secretariat is not a party to this action.

7. FTI and Secretariat are consulting firms that compete in a variety of sectors, including construction, forensic accounting, and investigations. FTI recently filed a separate lawsuit against Secretariat in the U.S. District Court for the Northern District of Georgia, alleging among other things that Secretariat induced Mr. Westerman and numerous other FTI professional staff to breach their employment-related duties to FTI. *See FTI Consulting, Inc. v. Secretariat Advisors, LLC*, No. 1:24-cv-1356-TWT (N.D. Ga., filed Mar. 28, 2024).

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest.

9. This Court has personal jurisdiction over Mr. Westerman pursuant to D.C. Code § 13-423(1) based upon his transacting business in the District of Columbia, including through his employment agreement with FTI (the "Employment Agreement"), his travel to the District of Columbia to meet with other senior FTI colleagues, and his numerous interactions with FTI personnel in the District of Columbia in connection with his employment with FTI.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events and conduct giving rise to FTI's claims occurred in the District of Columbia.

**ALLEGATIONS OF FACT COMMON TO ALL COUNTS**

11. Mr. Westerman began working for FTI in 2010. His work for FTI included engagements representing companies and board of director committees to conduct internal investigations in connection with subpoenas, government inquiries, and whistleblower allegations related to accounting and financial reporting matters.

12. On October 21, 2019, Mr. Westerman entered into the Employment Agreement at issue in this action, which set forth the terms and conditions of his ongoing employment by FTI as a senior managing director. FTI's Chief Human Resources Officer signed the agreement for FTI, LLC from its headquarters in Washington, D.C.

13. Mr. Westerman agreed to abide by a set of restrictive covenants and specifically acknowledged them as reasonable in view of the consideration he was receiving under the

Employment Agreement. Specifically, Mr. Westerman was highly compensated in the form of a substantial seven-figure annual base salary, six-figure annual performance bonuses, and retention loans and grants of seven figures.

14. Among those covenants, in § 12 of the Employment Agreement, Mr. Westerman agreed not to compete against FTI through one year after the termination of his employment for any reason, plus the duration of any violations of his restrictive covenants.

15. The noncompete clause that Mr. Westerman accepted as reasonable covered places where he performed services for FTI as well as places where FTI clients for which he performed services were located.

16. Mr. Westerman specifically acknowledged that due to the nature of his work for FTI, the geographic scope of his restrictive covenants was reasonable and necessary to protect the legitimate interests of FTI.

17. Mr. Westerman further agreed that during the same restricted period, he would not solicit certain business, clients, or employees of FTI, as more particularly set forth in § 13 of the Employment Agreement.

18. In § 14 of his Employment Agreement, Mr. Westerman further agreed not to use FTI's Confidential Information in a manner reasonably likely to be detrimental to the Company's business.

19. In addition, Mr. Westerman agreed in § 19 of the Employment Agreement to specific remedies that would be available to FTI in the event he violated any of his restrictive covenants. Mr. Westerman expressly agreed that the harms to FTI resulting from any such breaches of the noncompete clause and non-solicitation clause could be difficult to quantify, such

that in the event of his breaches of §§ 12 or 13 of the Employment Agreement, he would pay FTI certain sums as liquidated damages depending on the specific nature of those violations.

20. For breaches of the noncompete clause, Mr. Westerman agreed to pay FTI a sum equaling his total compensation received from FTI during the prior 12 months —including salary, bonus, and incentive compensation, but excluding Benefit Plans.

21. Mr. Westerman further agreed to pay FTI separate amounts in the event of any breaches of the non-solicitation clause.

22. In § 19 of the Employment Agreement, Mr. Westerman acknowledged that each sum specified therein is a "reasonable forecast of the just and fair compensation for the harm to the Company that would result by Employee's breach, and is not a penalty."

23. Mr. Westerman further agreed that the payments specified in § 19 of the Employment Agreement do not preclude FTI from seeking additional remedies, including a preliminary or permanent injunction restraining him from violations of the restrictive covenants.

24. Mr. Westerman agreed that his Employment Agreement is governed by Maryland law, which is the law under which each Plaintiff was organized and has its ongoing corporate existence.

25. The Parties agreed in the Employment Agreement that any claims by FTI regarding breaches of Mr. Westerman's confidentiality, non-disclosure, non-compete, or non-solicitation obligations, or regarding any improper disclosure or use of FTI's trade secrets or infringement of FTI's intellectual property rights, may be brought in any court of competent jurisdiction and are not subject to arbitration.

26.     Schedule I of the Employment Agreement set forth the terms of Mr. Westerman's compensation, including his annual base salary, certain terms governing his eligibility for a revenue bonus, and certain additional compensation and employment terms.

27.     From at least a date in 2020, and continuing through the events alleged herein, Mr. Westerman's primary work location was Wyoming, where he resides and performed most of his professional services for FTI's clients. From at least 2021 and continuing at least through his resignation from FTI, and possibly thereafter, Mr. Westerman designated Wyoming as his state jurisdiction for income tax reporting purposes.

28.     In a September 20, 2023 Amendment to the Employment Agreement, Mr. Westerman and FTI agreed to a replacement for Schedule I, which set forth updated terms concerning Mr. Westerman's compensation, including a substantial retention bonus in the event of his continued employment with FTI through certain future dates.

29.     In a letter dated January 15, 2024, Mr. Westerman notified FTI of his resignation from FTI, to be effective February 29, 2024.

30.     In a letter dated February 28, 2024, FTI acknowledged receipt of Mr. Westerman's resignation notice and provided him with a detailed summary of his obligations under the Employment Agreement, including his continuing obligations to comply with the restrictive covenants in §§ 11, 12, and 13 of his Employment Agreement.

31.     In its February 28 letter, FTI stated its understanding that Mr. Westerman was commencing employment with Secretariat, a competitor firm, during the restricted noncompete period, and set forth an itemized calculation of the resulting amounts Mr. Westerman owed to FTI pursuant to § 19(i) of the Employment Agreement.

32. FTI computed the amount of Mr. Westerman's required payment to FTI as $2,317,564.06, based on the terms set forth in § 19(i) of the Employment Agreement.

33. In the February 28 letter, FTI further notified Mr. Westerman that this calculation of liquidated damages was limited to a breach of the noncompete clause in § 12 of the Employment Agreement, and the Company was still assessing potential violations of the non-solicitation clause in § 13 of the Agreement.

34. FTI further informed Mr. Westerman in the February 28 letter of his obligation to repay FTI certain additional amounts totaling $1,645,380.01 for a 2021 loan made to him by FTI and for his 2023 retention bonus. Mr. Westerman has since repaid that amount and these obligations are not at issue in this matter.

35. On March 25, 2024, FTI sent an additional letter to Mr. Westerman restating FTI's position that his resignation to take up a competing position at Secretariat was in breach of § 12 of his Employment Agreement, and demanding payment of $2,317,564 by March 29, 2024.

36. In the March 25 letter, FTI also stated that it had recently learned that Mr. Westerman may be visiting London for the apparent purpose of recruiting additional FTI professionals to join Secretariat, which would violate his duty not to directly or indirectly solicit FTI employees on behalf of any other company. In the letter, FTI asked Mr. Westerman to confirm in writing that he would not be participating, directly or indirectly, in any Secretariat recruitment efforts aimed at any FTI employees. FTI further reminded Mr. Westerman in that letter of his duty not to solicit FTI clients while employed at Secretariat, which if breached could result in additional damages under § 19(ii) of the Employment Agreement. FTI requested that Mr. Westerman refrain from any and all further breaches of the Employment Agreement.

37. Upon information and belief, Mr. Westerman is soliciting, or indirectly causing the solicitation of, at least three of his former FTI colleagues, with whom he had worked closely on FTI client matters before his resignation, to terminate their employment with FTI and join Secretariat.

38. In a separate legal action filed in the Northern District of Georgia against Secretariat, FTI has alleged: that Secretariat is undertaking a coordinated campaign to raid FTI's professional staff, to tortiously induce breaches of their restrictive covenants and violations of their obligations not to disclose FTI's trade secrets and other Confidential Information; and that through these wrongful acts Secretariat has succeeded in misappropriating and using to FTI's detriment and Secretariat's unfair competitive advantage FTI's Confidential Information derived from newly recruited professional staff who had previously worked at FTI. One such new recruit is Mr. Westerman.

## COUNT I: BREACHES OF THE EMPLOYMENT AGREEMENT

### (Failure to Make Required Payment)

39. Plaintiffs restate and incorporate paragraphs 1 through 38.

40. Through his employment as a Managing Director of Secretariat, including in matters that involve forensic accounting, internal investigations, financial reporting, governmental and regulatory inquiries, and similar subject areas, and in the same geographic areas covered by his work for FTI, Mr. Westerman is in breach of his noncompete covenant set forth in § 12 of his Employment Agreement with FTI.

41. In the event of any such violation, Mr. Westerman agreed to pay FTI a certain amount based on § 19(i) of the Employment Agreement, consisting of his prior 12 months of total

earned compensation from FTI (including salary, bonus, and incentive compensation but excluding Benefit Plans).

42. Mr. Westerman acknowledged that this sum was a reasonable forecast of the just and fair compensation for the harm to FTI that would result from his breach of his non-compete obligation, rather than a penalty.

43. The liquidated damages agreed to by Mr. Westerman will in fact fairly compensate FTI for the lucrative business opportunities that Mr. Westerman likely will develop for Secretariat in direct competition with FTI during the agreed noncompete period.

44. The liquidated damages payment computed by FTI under § 19(i) of the Employment Agreement is a conservative estimate of the earnings that FTI reasonably expected it could lose and a competitor could gain from Mr. Westerman's primary business originations and personal billings during the one-year restricted period.

45. Upon information and belief, Mr. Westerman's compensation terms and other financial inducements he has received for agreeing to work for Secretariat in violation of his Employment Agreement with FTI, including any signing bonus or agreement by Secretariat to advance his counsel fees and indemnify him against any liabilities to FTI that Mr. Westerman incurs, will likely offset or exceed the amount of the payment required under § 19(i) of the Employment Agreement.

46. In its letters dated February 28 and March 25, 2024, FTI demanded that Mr. Westerman pay FTI $2,317,564 by no later than March 29, 2024.

47. To date, Mr. Westerman has neither paid that amount nor responded to FTI's demands for payment.

48. Mr. Westerman's continuing non-payment of the amount owed constitutes a breach of his payment obligations under § 19(i) of the Employment Agreement, causing FTI damages.

WHEREFORE, FTI seeks a judgment against Mr. Westerman including an award of damages in the amount of $2,317,564, plus prejudgment and post-judgment interest at the applicable statutory rates, and any and all additional relief that the Court deems just and proper.

### COUNT II: DECLARATORY JUDGMENT THAT THE NON-COMPETE PROVISIONS ARE VALID AND ENFORCEABLE

49. Plaintiffs restate and incorporate paragraphs 1 through 38.

50. The Declaratory Judgment Act confers discretion on this Court, in a case of actual controversy within its jurisdiction, to declare the rights and other legal relations of any interested party seeking a declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201(a).

51. The Parties are engaged in an actual, substantial controversy that warrants the issuance of a declaratory judgment concerning the validity of the non-compete clause contained in § 12 of Mr. Westerman's Employment Agreement.

52. Specifically, Mr. Westerman has failed in various written and oral communications with FTI to acknowledge that he is bound by his covenant not to compete through one year following the date of his termination from FTI, and he recently accepted employment as a managing director of Secretariat, a major strategic competitor of FTI, as part of an ongoing campaign by Secretariat to recruit FTI's professional staff and lure away FTI's existing clients.

53. A judicial declaration that Mr. Westerman's restrictive covenant under § 12 of the Employment Agreement is valid and enforceable will afford substantial and immediate relief to FTI by confirming the reasonableness of the scope of this covenant, which is similar in nature to restrictive covenants contained in other employment contracts between FTI and its senior management personnel.

54. A judicial declaration will constitute a prudent exercise of the Court's discretion that will prove instructive for interested non-parties, including those present and former employees of FTI who may be similarly situated to Mr. Westerman, and may take notice of these proceedings.

WHEREFORE, FTI seeks a judicial declaration that the noncompete clause contained in § 12 of Mr. Westerman's Employment Agreement with FTI is valid and enforceable, and such other relief as this Court deems just and proper.

### COUNT III: DECLARATORY JUDGMENT THAT THE NON-SOLICIT PROVISIONS ARE VALID AND ENFORCEABLE

55. Plaintiffs restate and incorporate paragraphs 1 through 38.

56. The Parties are engaged in an actual, substantial controversy that warrants the issuance of a declaratory judgment concerning the validity of the non-solicitation provisions contained in § 13 of Mr. Westerman's Employment Agreement.

57. In its February 28, 2024 letter, FTI specifically advised Mr. Westerman to comply with his duties of non-solicitation with respect to FTI client matters, clients, and employees, as well as his other obligations pursuant to the restrictive covenants in his Employment Agreement.

58. In its March 25, 2024 letter, FTI reminded Mr. Westerman of his non-solicitation obligations once again, including his duty for 12 months following his termination not to solicit other FTI employees. FTI specifically referenced its understanding that Mr. Westerman may be traveling to London for the apparent purpose of recruiting additional FTI professionals to join Secretariat.

59. The March 25 letter stated, "we need you to confirm in writing that you will not be participating – directly or indirectly – in any Secretariat recruitment efforts of any FTI employees." The letter also reminded Mr. Westerman of his ongoing obligation not to solicit FTI clients while

employed by Secretariat. The letter specifically requested Mr. Westerman to refrain from any and all such breaches of his non-solicitation obligations under his Employment Agreement.

60. To date, Mr. Westerman has not responded to either of FTI's letters and has not confirmed in writing that he will not participate in efforts taken on behalf of Secretariat to recruit FTI personnel. Nor has he provided any response to FTI's specific concerns related to the London trip.

61. Mr. Westerman's ongoing failure to provide FTI with assurances that he will abide by his non-solicitation obligations, as well as his apparent direct or indirect solicitation of three of his former FTI colleagues with whom he worked closely prior to his resignation, have generated uncertainty about whether he is currently breaching his non-solicitation obligations to FTI, has disavowed those obligations, or intends to violate those obligations by soliciting FTI's employees and/or clients on behalf of Secretariat.

62. A judicial declaration that Mr. Westerman's non-solicitation obligations in § 13 of the Employment Agreement are valid and enforceable will afford substantial and immediate relief to FTI by confirming the reasonableness of their duration and scope, and will allow the Parties to conform their future conduct to the declaration, consistent with their contractual rights and obligations during the period of the non-solicitation covenant.

63. A judicial declaration will constitute a prudent exercise of the Court's discretion. The non-solicitation covenant in Mr. Westerman's Employment Agreement is similar in nature to restrictive covenants contained in employment contracts between FTI and other senior management personnel. As a result, an order entering the declaratory relief sought by FTI in this matter may prove instructive for interested non-parties, including those present and former

employees of FTI who may be similarly situated to Mr. Westerman and take notice of these proceedings.

WHEREFORE, FTI seeks a judicial declaration that the non-solicitation covenants contained in § 13 of Mr. Westerman's Employment Agreement with FTI are valid and enforceable, and such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs FTI Consulting, Inc. and FTI, LLC demand a trial by jury for all issues triable of right by a jury.

Date: April 12, 2024

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

*/s/ William J. Murphy*
William J. Murphy (DDC Bar No. 350371)
Daniel P. Moylan (*pro hac vice* forthcoming)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 949-1146 (office)
(410) 659-0436 (fax)
wmurphy@zuckerman.com
dmoylan@zuckerman.com

Ezra B. Marcus (DDC Bar No. #D00488)
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800 (office)
(202) 822-8106 (fax)
emarcus@zuckerman.com

*Counsel for Plaintiffs*